**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **NAKESHIA "NIKKI" JONES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION NO.:** |
| v. ) | **CV 19-1023** |
| ) | |
| **INDUSTRY ONE, MOBILE, INC., and** ) | |
| **KEVIN DENNIS,** ) | **JURY DEMAND** |
| ) | |
| Defendants. ) | |

**COMPLAINT**

**I.   INTRODUCTION**

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter "Title VII") which provides for relief against discrimination in employment on the basis of sex and retaliation related thereto. The plaintiff also sets forth claims under laws of the State of Alabama. The plaintiff seeks compensatory and punitive damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

**II.   JURISDICTION AND VENUE**

2. The unlawful employment practices alleged herein below were committed by the defendants within Mobile County, Alabama. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 28 U.S.C. §§ 2201 and 2202. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(g).

3. The plaintiff requests a jury trial on all issues pursuant to 42 U.S.C § 1981a.

## III. PARTIES

4. The plaintiff, Nakeshia "Nikki" Jones (hereinafter "Jones" or "Plaintiff"), is a female citizen of the United States, and a resident of the State of Alabama. Plaintiff was a former employee of the defendant, Industry One Mobile, Inc., at the defendant's Mobile, Alabama, location.

5. The defendant, Industry One Mobile, Inc., (hereinafter "Industry One" or "defendant") is a Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the plaintiff's employer within the meaning of Title VII.

6. At all times relevant to this action, Industry One has employed at least fifteen (15) or more employees for the purposes of Title VII as a single employer, a joint employer, and/or via agency with Industry One, Inc.; Industry One Group, Inc.; Industry One Plant Services, Inc.; Industry One Services, Inc.; and/or Industry One Trucking, Inc.

7. The defendant, Kevin Dennis (hereinafter "Dennis" or "Defendant"), at all times material to this action was employed by Industry One its Mobile, Alabama, location. Dennis was a direct supervisor of the Plaintiff. Dennis is a male citizen of the United States, and upon information and belief is presently a resident of the State of Alabama.

## IV. ADMINISTRATIVE EXHAUSTION

8. The Plaintiff has satisfied all administrative prerequisites for filing suit under Title VII against Defendant. The Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 20, 2019. On August 30, 2019, a Notice of Right to Sue was issued by the E.E.O.C. and Plaintiff is timely filing this suit within ninety (90) days of

her receipt of the Notice of Right to Sue.

## V. STATEMENT OF FACTS AND CLAIMS

9. Plaintiff began working for the Defendant Industry One as the Administration/Office Manager at their Mobile, Alabama, office on February 26, 2019.

10. Plaintiff reported to Kevin Dennis, her supervisor and the Mobile Operations Manager.

11. Shortly after the Plaintiff's employment began she was subjected to ongoing acts of unwelcome sexual harassment by both her supervisor, Kevin Dennis, and by male employees including Timothy Pugh, Robert Williams, and Detrania Wommack.

12. The sexual harassment continued up to and through the Plaintiff's last day of work on July 29, 2019.

13. In or around March 2019 Kevin Dennis began making unwelcome sexual advances towards Plaintiff. He repeatedly asked the Plaintiff to go out with him; would tell her she was "fine" and make comments about her body; and told her that if she went out to work on the road she would just be "eye candy."

14. Dennis made such inappropriate comments in front of male employees as well, stating to Plaintiff that she "got just enough to work with" in front of the male employees while referring to Plaintiff's body shape.

15. Plaintiff repeatedly informed Dennis that she was not interested in him, declined his advances, and told him that she had a boyfriend.

16. However, Dennis' sexual harassment of the Plaintiff did not stop. He continued to ask her out and make inappropriate comments about her looks and her body.

17. Dennis informed Plaintiff that a female co-worker was gay and questioned why the Plaintiff was nice to her, insinuating a sexual relationship between the women. He then asked Plaintiff, "you gonna give me a chance–ain't no one gonna know," and continued to make sexual advances towards her.

18. Plaintiff continued to rebuff Dennis' advances. When she did not give in to him he would then make things hard on her at work in the following days.

19. Dennis' sexually harassing behavior did not stop and continued each time he came into the Mobile office. He asked her out at least four (4) times over three (3) months; told her that she was "fine" or commented on her body every time he saw her; told her twice that she would only be "eye candy" if she ever did work out on the road; and made multiple comments about her "ass."

20. Dennis would also make comments to Plaintiff implying that if she went out with him that he would be able to get her a pay raise or promotion from corporate.

21. Male employees also subjected Plaintiff to unwelcomed sexual harassment. In or around March/April 2019 Detrania Wommack consistently asked the Plaintiff out, and would come into the office to hit on her up and until he got sent out to work on the road. Plaintiff made it clear that she was not interested.

22. Robert Williams also asked the Plaintiff out several times and told her that he did not know what was going on with she and Dennis but that he, "was in it to win it," with her. Williams told Plaintiff she was sexy and "eye candy," and told her, "Baby girl, if you go out on the road you have to make yourself seen and prove yourself," because "if a woman goes on the road they have to make time," with the men. Plaintiff clearly rebuffed Williams' advances and made him leave the office.

23. Timothy Pugh also asked the Plaintiff out and for her to come over to his house. Plaintiff also rebuffed his advances.

24. Throughout her employment Plaintiff made repeated complaints of the sexual harassment to multiple members of management including Dan Patrino (Operations Manager), Rick Spencer (Chicago Branch Manager), Frankie Bildner (Office Manager), and Matt Harris (Corporate Office Manager).

25. However, no actions were taken in response to any of the Plaintiff's complaints and the sexual harassment continued.

26. In or around March 2019, the Plaintiff complained to Dan Patrino of sexual harassment and retaliation by Dennis, telling him that Dennis was hitting on her and making comments about her body and that when she refused to go out with him that Dennis would make things harder on her the next day or call corporate about her. Patrino just replied that Dennis had always "gotten away with murder," and that he would talk to James, the owner. He informed the Plaintiff that the owner had previously said to let Dennis do whatever he wanted. Patrino told Plaintiff to call the owner, change the locks on the office door, and "watch your back."

27. Plaintiff then tried to reach the owner, James Schneider, however all her calls to the owner went instead directly to Frankie Bildner at corporate. So, Plaintiff made her complaints of sexual harassment to Bildner. Bildner replied that Dennis gets away with "sheer murder," and that she would talk to Schneider and Matt Harris but that Dennis had been terminated before and always came back.

28. Shortly after Plaintiff made these complaints Dennis escalated his retaliation towards her–finding fault in everything she did and threatening to call corporate about her.

29. In or around April 2019, the Plaintiff again complained to Patrino about the sexual harassment by Dennis and the male employees. Patrino told her to tell Rick Spencer. She did so and Spencer told her to tell Dennis.

29. So, in or around April/May 2019 the Plaintiff complained to Dennis about the sexual harassment by the male employees. Dennis just laughed it off.

30. In or around April 2019, the Plaintiff also called Matt Harris about Dennis' behavior towards her including his comments about her "ass," being "eye candy," and Dennis' retaliation when she rebuffed his advances by making her job harder and sending false reports about her to corporate. Harris said that he would talk to Dennis about treating people with respect.

31. However, neither the harassment or retaliation ended. In or around May 2019, the Plaintiff confronted Dennis about this and told him she was tired of him hitting on her, that she was hired because she was competent and could do the job, that he wouldn't help her with anything, that she was done with this and tired if it, and that if she had complied with his harassment and BS she would have a key to the city by now." Dennis replied, "You damn right you would." The Plaintiff was very upset and told Dennis that she was going to call Matt Harris.

32. The Plaintiff then again called Matt Harris and told him about the incident with Dennis and the ongoing harassment and retaliation. Nothing was done and the harassment and retaliation continued.

33. In or around April/May 2019, the Plaintiff also complained to Rick Spencer of the sexual harassment. She told Spencer that Dennis was out of control and kept referring to her "ass" and that she was tired of it. Spencer asked if she had told Bildner or Patrino and she replied that she had. Spencer told her that Dennis had been there for years and that he [Spencer] wasn't going to

make waves.

34. In or around May/June 2019, the Plaintiff again called Patrino about the sexual harassment not stopping and getting worse with male employees. She informed Patrino that she believed Dennis was sending male employees to the office to harass her. Patrino told Plaintiff to call the owner–but when she did so her calls always went to Bildner.

35. Plaintiff complained to Bildner about the ongoing sexual harassment 3-4 times through early May 2019 and nothing was done to make it stop.

36. The Plaintiff's last day of work was July 29, 2019.

37. On that day Dennis asked the Plaintiff out on a date again. She declined. He then also told her to "come give me a hug," because corporate wanted him to tell her something. She declined. He continued harassing Plaintiff and said, "let me give you a hug–you look really pretty today."

38. Plaintiff then clearly told Dennis, "no" and that this was ridiculous, that this had been going on for months, and that she was not a touchy/feely person and did not want to hug him.

39. Dennis' cousin, Larry, then came in and told the Plaintiff, "you sexy as a motherfucker," in front of Dennis. Plaintiff told Larry that he was disrespectful and asked Dennis what was he going to do about this. Dennis just laughed and said, "you are fine as a motherfucker."

40. About an hour after this incident, Dennis informed the Plaintiff that corporate wanted him to let her go and that she was terminated. When the Plaintiff asked for what reason, Dennis replied that they did not give him a reason.

41. That same day Plaintiff called Rick Spencer and complained that Dennis had been hitting on her for months, she followed the chain of command with complaints and nothing was done about it, and that now Dennis had fired her. She requested a direct phone number for the owner so

she could talk to him about the situation. Spencer refused to give it to her.

42. Plaintiff repeatedly tried to reach Corporate Office Manager Matt about the matters but was only able to leave voice mail messages–including that she needed to talk to him immediately, that she was having issues with Dennis, and that she did not feel comfortable.

43. No one returned the Plaintiff's calls so she also texted Matt with no results.

44. The following day, July 30, 2019, the Plaintiff called Harris and Bildner at corporate office about the termination and Plaintiff informed them that she had all the company equipment to return and requested an email receipt or confirmation to be signed off on for same. She also asked to be able to retrieve her personal items. It was agreed that Dennis would meet the Plaintiff at 10:00 a.m. to retrieve the company items.

45. At 10:00 a.m. that same morning the Plaintiff and her son went and retrieved her personal items from the office. They then waited over an hour for Dennis to come retrieve the company items. Dennis never showed.

46. The next day, July 31, 2019, the Plaintiff went to the EEOC to inquire about filing a Charge of Discrimination against the Defendant.

47. Plaintiff then went to the Defendant's Mobile office to try and return the company equipment to Dennis. She told him that she had everything in the trunk of her car except for the laptop because she didn't want to leave it in the trunk in the heat while she was at the EEOC that morning.

48. Dennis then refused to take the equipment. She told him that she had been trying to return the equipment for days. He told her he could "have you locked up for this," and refused to take the company equipment from her. Dennis then physically got into the Plaintiff's face in an

aggressive manner.

49. Frightened, the Plaintiff left and ran to Police Headquarters next door for help. Shortly thereafter, a Mobile Police Officer came into the Headquarters building and arrested Plaintiff for Theft of Property for allegedly failing to return the company equipment.

50. Dennis swore out a false criminal report against the Plaintiff and had her arrested. He then filmed the arrest on his phone and circulated it on social media.

51. Dennis also created a "fake" FaceBook page of Plaintiff featuring her mugshot photo from the arrest and circulated it among Plaintiff's online connections.

52. All of the company equipment was returned to the Defendant on August 1, 2019, during the Plaintiff's fourth attempt to do so.

53. All criminal charges against Plaintiff were subsequently dismissed *nolle prosequi*.

54. Plaintiff has been discriminated against on the basis of her gender, female, by being subjected to a sexually hostile work environment with respect to the terms, conditions and benefits of her employment, culminating in her termination.

55. Plaintiff has also been subjected to unlawful retaliation for rebuffing unwanted sexual advances and/or for her prior complaints of sexual harassment, culminating in her termination, falsely sworn criminal charges, false arrest, and public humiliation.

56. Dennis remained employed with the Defendant.

57. The Plaintiff did not receive any training on sexual harassment, sex discrimination or retaliation from the Defendant.

58. The Defendant failed to promulgate or distribute an effective policy or procedure for lodging sexual harassment, sex discrimination or retaliation complaints.

59.     The unlawful conduct of the Defendants as described above was done with malice and/or reckless disregard of the Plaintiff's Federally protected rights.

60.     The Defendants' conduct as described above caused the plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

### COUNT I - TITLE VII VIOLATIONS BY INDUSTRY ONE: SEXUAL HARASSMENT AND RETALIATION

61.     The Plaintiff re-alleges and incorporates by reference paragraphs 9-60 above with the same force and effect as if fully set out in specific detail hereinbelow.

62.     The Defendant, Industry One, wilfully and maliciously subjected the Plaintiff to unlawful sexual harassment, thereby discriminating against her on the basis of sex with respect to the terms, conditions, and privileges of her employment, and culminating in her termination.

63.     The sexual harassment of the Plaintiff by her supervisor and her co-workers, as set out above, was unwelcome and was severe and/or pervasive enough to adversely affect the terms and conditions of her employment.

64.     The Defendant knew or should have known of the sexual harassment of the Plaintiff and/or the sexually hostile environment to which she was subjected and did not take effective preventative action or prompt effective remedial action.

65.     The Plaintiff made good faith and reasonable complaints of sexual harassment and retaliation to the Defendant.

66.     The Defendant retaliated against the plaintiff for protesting and complaining about sexual harassment and/or retaliation in the terms, conditions and benefits of her employment, including subjecting her to unwarranted discipline, termination, filing of false criminal reports, false

arrest, and acts of public humiliation.

67. Said sexual harassment and retaliation was done maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

68. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunction relief, and compensatory and punitive damages is her only means of securing adequate relief.

69. Plaintiff is now suffering, and will continue to suffer irreparable injury from defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT II - NEGLIGENT AND/OR WANTON HIRING, SUPERVISION, TRAINING, AND RETENTION BY INDUSTRY ONE

70. The Plaintiff re-alleges and incorporates by reference paragraphs 9-60 above with the same force and effect as if fully set out in specific detail hereinbelow.

71. This is a claim arising under the law of the State of Alabama to redress the negligent and/or wanton hiring, supervision, training, and retention of Kevin Dennis by the Defendant, Industry One.

72. The Defendant negligently and/or wantonly failed to adequately hire, supervise and train and negligently and/or wantonly retained Kevin Dennis, Frankie Bildner, Matt Harris, Dan Patrino, and/or Rick Spencer, which proximately caused the invasion of the Plaintiff's privacy, the outrageous conduct of Dennis towards the Plaintiff, the libel/defamation of character of the Plaintiff, the sexual harassment of the Plaintiff, and the acts of retaliation against the Plaintiff as set out herein.

73. These unlawful acts to which the Plaintiff was subjected caused her great emotional distress for which she seeks compensatory and punitive damages against the Defendant.

### COUNT III -
### INVASION OF PRIVACY
### BY DEFENDANTS KEVIN DENNIS AND INDUSTRY ONE

74. The Plaintiff re-alleges and incorporates by reference paragraphs 9-60 above with the same force and effect as if fully set out in specific detail hereinbelow.

75. This is a claim arising under the laws of the State of Alabama to redress violations by Defendant Kevin Dennis of the Plaintiff's right to privacy and the ratification of that conduct by Defendant Industry One.

76. The conduct of Kevin Dennis, as set out above, was an intentional invasion of Plaintiff's privacy and proximately caused Plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendants.

77. The Defendant Industry One condoned, authorized, and/or ratified Kevin Dennis' unlawful conduct and is directly liable for the acts of its agent.

### COUNT IV - LIBEL/DEFAMATION OF CHARACTER
### BY DEFENDANTS KEVIN DENNIS AND INDUSTRY ONE

78. The Plaintiff re-alleges and incorporates by reference paragraphs 9-60 above with the same force and effect as if fully set out in specific detail hereinbelow.

79. This is a claim arising under the laws of the State of Alabama to redress violations by Defendant Kevin Dennis of defaming the Plaintiff's character via libelous communications and the ratification of that conduct by Defendant Industry One.

80. The conduct of Kevin Dennis, as set out above, was an intentional making of substantially untrue statements appearing in print, police reports, emails, social media, photographs, videos, and/or another type of visual content about the Plaintiff which were made knowingly or

recklessly and published to others and which harmed the Plaintiff.

81. Plaintiff suffered great emotional distress for which she claims compensatory and punitive damages from the Defendants.

82. The Defendant Industry One condoned, authorized, and/or ratified Kevin Dennis' unlawful conduct and is directly liable for the acts of its agent.

## COUNT V: OUTRAGE BY DEFENDANTS KEVIN DENNIS AND INDUSTRY ONE

83. Plaintiff re-alleges and incorporates by reference paragraphs 9 - 60 above with the same force and effect as if fully set out in specific detail hereinbelow.

84. This is a claim arising under the law of the State of Alabama to redress Defendant Dennis' outrageous conduct towards the Plaintiff and Defendant Industry One's ratification of that conduct.

85. The conduct of Defendant Dennis, as set out above, was extreme, outrageous and beyond the boundaries of decency in civilized society, and it proximately caused Plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendants.

86. Defendant Industry One condoned, authorized, and/or ratified Defendant Dennis' conduct, because they knew or should have known of Defendant Dennis' outrageous conduct towards Plaintiff and failed to stop the conduct.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant Industry One violative of the rights of the Plaintiff as secured by Title VII and the laws of the State of Alabama.

2. Grant Plaintiff a permanent injunction enjoining the Defendant Industry One its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate Title VII and the laws of the State of Alabama.

3. Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her the position(s) she would occupy in the absence of sex harassment and retaliation and/or frontpay, backpay (plus interest), compensatory, punitive, and/or nominal damages.

4. Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her the compensatory, punitive and/or nominal damages to which she is entitled as a result of the Defendants' violations of Alabama State laws.

5. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

                Respectfully submitted,

                <u>s/ Temple D. Trueblood</u>
                Temple D. Trueblood (TRUE0355)
                Counsel for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
(205) 314-0500

CO-COUNSEL:
EDWARD L.D. SMITH
Post Office Box 1643
Mobile, Alabama 36633-1643
(251) 432-0447

**THE PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

s/ Temple D. Trueblood
OF COUNSEL
