**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

NAKESHIA NIKKI JONES,        *

                                 *

     **Plaintiff,**         *

                                 *

**vs.**                            *   **CIVIL ACTION NO. 19-01023-JB-B**

                               *

**INDUSTRY ONE, MOBILE, INC.,**  *

*et al.,*                   *

                               *

     **Defendants.**


## REPORT AND RECOMMENDATION

This action, which was referred pursuant to 28 U.S.C. § 636(b)(1)(B), is before the Court on Plaintiff's Motion for Default Judgment against Defendants Industry One Mobile, Inc. ("Industry One"), and Kevin Dennis ("Dennis"). (Doc. 49). Upon review, it is recommended that the Clerk's Entry of Default (Doc. 48) be vacated, that Plaintiff's Motion for Entry of Default (Doc. 45) under Federal R. Civ. P. 55(a) be denied, that Plaintiff's Motion for a Default Judgment of liability (Doc. 49) be granted, in part, as set forth herein, and that the Court enter a judgment against Defendants Industry One and Kevin Dennis, with damages to be determined at a later evidentiary hearing.

### I.  Background.

Plaintiff Nakeshia Nikki Jones commenced this action against Defendants Industry One and Kevin Dennis in this Court on December

2, 2019. (Doc. 1).  Jones asserts the following claims against each named Defendant: Count I: sexual harassment and retaliation under Title VII against Industry One; Count II: negligent and/or wanton hiring, supervision, training, and retention claims under Alabama state law against Industry One; Count III: invasion of privacy under Alabama state law against Industry One and Kevin Dennis; Count IV: libel/defamation of character under Alabama state law against Industry One and Kevin Dennis; and Count V: outrage under Alabama state law against Industry One and Kevin Dennis.  (Doc. 1 at ¶ 61-86).  In conjunction with these claims, Jones seeks relief in the form of a declaratory judgment, permanent injunction, reinstatement and/or front pay, backpay (plus interest), compensatory damages, punitive damages, nominal damages, costs, attorneys' fees, expenses, and such other relief and benefits to which she is entitled.  (Id. at 14).

Defendants were served with the complaint, and on February 13, 2020, Defendants filed an answer through their attorney, William A. Calunas.  (Doc. 15).  On March 16, 2021, attorney Calunas filed a motion to withdraw from further representation of Defendants.  (Doc. 38).  A hearing was conducted on March 31, 2021. At the hearing, Mr. Calunas reported that, despite repeated attempts to reach his clients, they had ceased communicating with him, which in turn, made it impossible for him to litigate their case.  Mr. Calunas stated that he had advised his clients that he

would request permission to withdraw from further representation of them, that he had sent a copy of his motion to withdraw to Defendants by U.S. mail, that there had been no response from his clients, and that Defendants had left him with no alternative but to seek permission to withdraw.  (Docs. 41, 42).

In an order dated April 1, 2021 (Doc. 42), the Court granted Mr. Calunas's motion to withdraw from representing Defendants Industry One and Kevin Dennis.  The Court also granted Defendant Industry One leave, until April 16, 2021, to obtain new counsel. (Doc. 42).  The Court expressly advised Industry One that corporations are prohibited from appearing in federal court without counsel.  (Id. at 2).  The Court further advised and cautioned Industry One that the failure of a corporate entity to obtain counsel, in violation of a court order or rule to do so, has repeatedly been held to support default judgment, even in the absence of violations of other rules or orders.  (Id.).  The Court also granted Defendant Kevin Dennis leave until April 16, 2021, to retain new counsel and to have his new counsel file a written notice of appearance with the Court.  (Id.).  Dennis was instructed that, in lieu thereof, he was required to advise the Court, in the form of a written pleading pursuant to Local Rule 5.1, of his intent to proceed *pro se* no later than April 16, 2021.  Dennis was also cautioned that failure to timely comply with the Court's order would result in a recommendation that an entry of default be

entered against him for failure to obey an order of the Court and for failure to prosecute. (Id. at 3). To date, no counsel has appeared for either Defendant, nor has Defendant Dennis advised the Court of his intention to proceed *pro se*. In fact, in the six months since the issuance of the Court's April 1, 2021, order, Defendants have not sought additional time in which to comply with the Court's order, nor have they responded to the order in any manner.

On April 26, 2021, Jones filed a motion for entry of default against Defendants Industry One and Kevin Dennis, pursuant to Fed. R. Civ. P. 55(a), as a sanction for failure to obey an order of the Court and for failure to defend. (Doc. 45). Subsequent thereto, the Clerk of Court entered a default against Defendants Industry One and Kevin Dennis. (Doc. 48). Jones now moves for a default judgment against both Defendants as a sanction for failure to obey the Court's orders to obtain counsel and to defend this case. (Doc. 49 at 3).

**II. Analysis.**

**A. Default Judgment as a Sanction.**

Under Federal Rule of Civil Procedure 55(a), when a party against whom a judgment for affirmative relief has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default. As noted, *supra,* in response to Jones's motion for entry of default pursuant

4

to Fed. R. Civ. P. 55(a), the Clerk entered a default against Defendants in this case.  However, at the time Jones filed her motion, Defendants' answer was already on file with the Court.  Thus, the Clerk's entry of default, pursuant to Fed. R. Civ. P. 55(a), was in error, and is due to be set aside.  Assuming Jones's motion for entry of default is reinstated as a result, it is due to be denied because Fed. R. Civ. P. 55(a) applies to the situation in which the defendant has not appeared after proper service.  It does not apply to a case such as this where the Defendants have an answer on file.  Accordingly, the undersigned recommends that the Clerk's entry of default (Doc. 48) be set aside and that Jones's request for entry of default (Doc. 45) be denied.

The Court now turns to Jones's request for a default judgment as a sanction for Defendants' failure to obey the Court's orders in this case and failure to defend.  A court may impose sanctions for litigation misconduct under its inherent power.  Eagle Hosp. Physicians, LLC v. SRF Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009)(citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991)).  The Court's inherent power derives from its need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  Eagle Hosp. Physicians, 561 F.3d at 1306 (quotation marks and citation omitted).  "The key to unlocking a court's inherent power is a finding of bad faith."  Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).  Sanctions

authorized under the court's inherent powers include the ultimate sanction of dismissal with prejudice or entry of default judgment. See Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1338 (11th Cir. 2002)(affirming the district court's imposition of sanctions, including dismissal with prejudice). Before a district court imposes the sanction of default judgment, the court must find a willful or bad faith failure to comply with its orders. Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542 (11th Cir. 1993). However, a court does not need to first impose lesser sanctions if those sanctions would be ineffective. Id. at 1544; see also Jackson v. Investigations & Sec. Bureau, Inc., 2018 U.S. Dist. LEXIS 219166, *11, 2018 WL 4603289, *4 (M.D. Fla. Aug. 27, 2018)(default judgment was warranted where corporate defendant failed to defend and participate in the litigation and failed to retain counsel, despite numerous warnings of the consequences of not retaining counsel); Alexander v. Moore, 2018 U.S. Dist. LEXIS 239969, *1, 2018 WL 4677835, *1 (M.D. Ala. Apr. 26, 2018)(default judgment as a sanction warranted where defendant disappeared for long periods of time, willfully neglected to update the court with her contact information, and showed "little interest in the litigation," thwarting plaintiff's counsel in discovery and reporting obligations and requiring the court to unnecessarily expend significantly limited resources); Bolar v. Southern Intermodal Express, 2018 U.S. Dist. LEXIS 158788, *5, 2018 WL

5116539, *2 (S.D. Ala. Sept. 17, 2018), *report and recommendation adopted sub nom.,* 2018 U.S. Dist. LEXIS 179588, *2, 2018 WL 5116093 (S.D. Ala. Oct. 19, 2018)("District courts possess inherent power to sanction errant litigants before them[,]" including the power to dismiss an action for failure to prosecute.); Zow v. Regions Fin. Corp., 595 Fed. Appx. 887, 889 (11th Cir. 2014)("if a party disregards an order despite being warned of the possible consequences, dismissal is generally not an abuse of discretion").

Here, Jones moves for a default judgment against Defendants as a sanction for Defendants' failure to comply with the Court's orders to obtain new counsel (or, in the case of Defendant Dennis, to notify the Court of his new counsel or his intention to proceed *pro se*)[1] and Defendants' failure to engage in the discovery process in this case.[2] (Doc. 45 at 2). For the reasons that follow, the Court finds that a default judgment is warranted against Defendants in this case.

In the amended Rule 16(b) scheduling order, the Court required

---

[1] Assuming that Defendant Dennis was proceeding *pro se* in this case, of which he has given the Court no indication, *pro se* litigants must comply with federal procedural rules, local court rules, or orders of the court. See, e.g., Brown v. Tallahassee Police Dep't, 205 Fed. Appx. 802, 802-03 (11th Cir. Nov. 15, 2006)(affirming *sua sponte* dismissal of *pro se* action for failure to prosecute or failure to obey a court order.).

[2] As noted, to date, neither Defendant has responded to any of the discovery served upon them by Plaintiff in January 2021 (Doc. 28), and both Defendants have "refused or otherwise failed to engage in the discovery and deposition process." (Doc. 45 at 2 n.1)

the parties to complete discovery on or before April 16, 2021. (Doc. 36). Jones argues that not only did the Defendants fail to participate in the discovery process as ordered, but they thwarted her efforts to comply with the Court's order. According to Jones, "counsel for Plaintiff and [former] counsel for Defendant repeatedly experienced the refusal of the Defendants to engage in providing any responses to discovery interrogatories and requests and in proceeding forward with the scheduling and taking of depositions, resulting in plaintiff filing a Motion to Compel discovery and in defense counsel seeking to withdraw[] as counsel of record." (Doc. 45 at 2). Former counsel for Defendants confirmed at the hearing on his motion to withdraw that neither Defendant would engage in the discovery process. (Id.).

As previously discussed with respect to Defendant Industry One, a corporation is an artificial entity that can act only through agents. It cannot appear *pro se,* and it must be represented by counsel. Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985). Industry One has known for months that it can defend this action only through licensed counsel. Likewise, Defendant Dennis has known for months that, in order to defend this case, he must hire new counsel or, alternatively, notify the Court in writing of his intention to proceed *pro se.* Yet, to date, neither Defendant has complied with the Court's order regarding

representation, nor has either Defendant communicated with the Court in any way regarding the Court's directives.

There can be no question on this record that Defendants' defiance of the Court's order to obtain counsel (or in the case of Kevin Dennis to simply notify the Court of his intention to appear *pro se*), Defendants' complete failure to respond to or communicate with the Court, Defendants' refusal to participate in discovery as required by the Court's amended scheduling order (Doc. 36), and Defendants' failure to defend against Plaintiff's motions for entry of default and default judgment (Docs. 45, 49), with the full knowledge that the sanctions for failing to comply with the Court's order to obtain new counsel and to defend this case include entry of a default judgment against each of them, indicates a deliberateness, willfulness, and bad faith on the part of these Defendants not to defend this case and supports a default judgment against them both. See American Resources, 2008 U.S. Dist. LEXIS 86310, 2008 WL 4701350 at *1 (where corporate defendant disregarded the court's orders for months to obtain counsel, "there can there be no doubt that a lesser sanction than default judgment will not suffice," as defendant "has made plain that it is no respecter of warnings of default judgment and that it will continue to ignore all court orders until default judgment is entered.").

Based on the foregoing, the Court finds that Defendants Industry One and Kevin Dennis are "no respecter of warnings of

default judgment and that [they] will continue to ignore all court orders until default judgment is entered." Id. The Court further finds that Plaintiff has suffered extreme prejudice in this action as a result of Defendants' conduct; that Defendants' conduct has greatly and unnecessarily interfered with the judicial process; that Defendants are wholly culpable; that Defendants were fully forewarned that a default judgment was a possible sanction for their conduct; and that a lesser sanction would have no efficacy under the circumstances.

**B. Sufficient Legal Basis for Default Judgment.**

A defaulting defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact for purposes of liability. Mangel v. Daza, 2020 U.S. Dist. LEXIS 59059, *5, 2020 WL 1666032, *1 (M.D. Fla. Apr. 3, 2020). Moreover, "[a] court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry." Id. (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.")). See also Whitney Nat. Bank v. Flying Tuna, 2011 U.S. Dist. LEXIS 115225, *7, 2011 WL 4702916, *2 (S.D. Ala. Oct. 4, 2011)(a default is "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability.")(citing Pitts ex

rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); Descent v. Kolitsidas, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005)("defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); Chudasama v. Mazda Motor Corp., 123 F .3d 1353, 1370 n.41 (11th Cir. 1997)("a default judgment cannot stand on a complaint that fails to state a claim.").

Here, the Court has thoroughly reviewed the complaint and the claims asserted against Defendants Industry One and Dennis and is satisfied that the assertions in the complaint sufficiently allege that Plaintiff is entitled to relief against Defendants Industry One and Dennis, as set forth below.

### 1. Factual Allegations.

Jones asserts that she began working for Defendant Industry One as the Administration/Office Manager at their Mobile, Alabama office in February 2019. (Doc. 1 at 3). Jones was supervised by Defendant Dennis, the Mobile Operations manager. (Id.). Jones asserts that shortly after her employment began, she was subjected to ongoing acts of unwelcome sexual harassment by her supervisor, Defendant Dennis, and by several male employees. According to Jones, Dennis and the male employees repeatedly asked her to go out with them and made inappropriate comments about her body. Dennis also questioned whether she was gay and insinuated that she was in a sexual relationship with a female co-worker. Dennis also

implied that if Jones went out with him, he would get her a pay raise or promotion. (Id. at 4). Jones asserts that she repeatedly rebuffed Dennis and the other male employees, and she made repeated complaints of sexual harassment to multiple members of the management team, but they took no action in response to her complaints, and the sexual harassment continued. (Id. at 4-5). Shortly after Jones complained, Dennis began to find fault with her work and threatened to call the corporate office on her. On July 29, 2019, Dennis fired Jones approximately one hour after she refused to go on a date with him. (Id. at 7).

Jones arranged with the corporate office to retrieve her personal items and to return her company equipment. Dennis was supposed to meet her at the office on July 30, 2019, but was a "no show." The next day, when she attempted to return the equipment, Dennis filed a false report accusing her of theft of company property and caused her to be arrested. He then filmed Jones's arrest and circulated it on social media. He also created a fake Facebook page of Jones featuring her arrest "mugshot," and he circulated it among Jones's online connections. All of the criminal charges against Jones were later dismissed. (Id. at 8-9).

> ### 2. Title VII Claim for Sexual Harassment and Retaliation(Count I).

In Count One, Jones alleges that Industry One willfully and

maliciously subjected her to unlawful sexual harassment and retaliation. (Doc. 1 ¶¶ 10-69).  Having reviewed the complaint in its entirety, the undersigned finds that the factual allegations of the complaint are adequate to state viable causes of action against Industry One for sexual harassment and retaliation under Title VII.

To establish a prima facie case of sexual harassment, a plaintiff must show: "(1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists." Xueyan Zhou v. Intergraph Corp., 353 F. Supp. 3d 1220, 1229 (N.D. Ala. 2019).  There are two alternative ways a plaintiff may establish a basis for an employer's vicarious liability in a Title VII sexual harassment claim: first, an employer is liable under Title VII if it, even unknowingly, permits a supervisor to take a tangible employment action against an employee, such as firing an employee, because she refused to give in to his sexual overtures; the second is based upon a hostile work environment theory where the environment is objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive

to be so.  See Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1244 (11th Cir. 2004).

Given Jones's assertion that her supervisor, Defendant Dennis, repeatedly requested sexual favors, and that when she rebuffed him and complained to management on several occasions (to no avail), Dennis targeted her for criticism and then terminated her employment, the undersigned finds that Jones has alleged facts sufficient to establish unlawful sexual harassment.  See Vance v. Ball State Univ., 570 U.S. 421, 440 (2013)("[Strict liability] exists when a supervisor actually takes a tangible employment action based on, for example, a subordinate's refusal to accede to sexual demands." ).

Jones also alleges that Industry One retaliated against her. Title VII prohibits an employer from retaliating against an employee for engaging in protected activity.  See 42 U.S.C. § 2000e-3(a). In particular, under Title VII, "[i]t shall be an unlawful unemployment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ."  Id.  In the absence of direct evidence, the employee first must make out a prima facie case of retaliation by showing (1) that she engaged in a statutorily protected activity, (2) that he she suffered an adverse employment action, and (3) that there is a causal relationship between the statutorily

protected activity and the adverse employment action. <u>Coutu v.</u>
<u>Martin Cnty. Bd. of Cnty. Comm'rs</u>, 47 F.3d 1068, 1074 (11th Cir.
1995), 47 F.3d 1068, 1074 (11th Cir. 1995).  Jones contends that
she repeatedly complained to various members of management,
including Defendant Dennis himself, about the sexual harassment
that she was being subjected to by Dennis and her other male co-
workers and that, in close proximity to her complaints, she was
terminated.  The undersigned finds that these allegations are
sufficient to make out a claim of retaliation against Industry
One.

> **3. Claims for Negligent and/or Wanton Hiring, Supervision, Training, and Retention against Industry One (Count II).**

Next, Count Two alleges claims against Industry One for
negligent and/or wanton hiring, supervision, training, and
retention under Alabama state law.  Jones alleges that Defendant
Industry One negligently and/or wantonly failed to adequately
hire, supervise, and train and negligently and/or wantonly
retained Kevin Dennis, Frankie Bildner, Matt Harris, Dan Patrino,
and/or Rick Spencer, which proximately caused the invasion of the
her privacy, the outrageous conduct toward her, the
libel/defamation of her character, the sexual harassment directed
against her, and the acts of retaliation against her, as detailed
in the complaint, which caused her injuries and damages. (Doc. 1
¶¶ 72-73).  Having thoroughly reviewed the complaint, the

undersigned finds that the factual allegations set forth in the complaint are adequate to state a viable cause of action against Industry One for negligent and/or wanton retention of Defendant Dennis under Alabama state law. See Edwards v. Hyundai Motor Mfg. Alabama, LLC, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009)("To support a claim of negligent supervision, the plaintiff must demonstrate that (1) the employee committed a tort recognized under Alabama law, . . . (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, . . . and (3) the employer failed to respond to this notice adequately.")(citations and internal quotation marks omitted); Jones Exp., Inc. v. Jackson, 86 So. 3d 298, 304 (Ala. 2010)("in order for an employer to be liable for the negligent hiring, training, retention, and supervision of its employee, the plaintiff must also prove wrongful conduct on the part of the employee.")(citations and internal quotation marks omitted); Booker v. Winn-Dixie Montgomery, LLC, 2012 U.S. Dist. LEXIS 158862, *79, 2012 WL 5409794, *25–26 (S.D. Ala. Nov. 6, 2012)("a claim for wanton supervision requires the plaintiff to establish by affirmative proof that the employer actually knew of the employee's incompetence or reasonably should have known of it. . . . Wanton supervision requires that the employer wantonly disregard its agent's incompetence).

Here, Jones asserts that Dennis and other Industry One male

employees engaged in ongoing sexual harassment toward her, that she repeatedly brought their misconduct to the attention of multiple Industry One managers, that the managers (including those at the corporate office level) were well aware of the sexual harassment and retaliation she suffered at the hands of Dennis, her supervisor, and other Industry One male co-employees, and that none of the managers took adequate, if any, steps to correct the misconduct. Accordingly, based on the allegations of the complaint, the undersigned finds that Jones has stated a viable cause of action against Defendant Industry One for negligent supervision and retention under Alabama law.[3]

### 4. Claim for Invasion of Privacy against Industry One and Dennis (Count III).

In Count Three, Jones asserts invasion of privacy by Defendants Industry One and Dennis under Alabama law. Jones contends that Dennis's conduct, as alleged in the complaint, was an intentional invasion of her privacy and proximately caused her to suffer great emotional distress and injury and that Defendant Industry One condoned, authorized, and ratified Dennis's unlawful conduct. (Doc. 1 ¶¶ 74-77). Having thoroughly reviewed the complaint, the Court is satisfied that the factual allegations set

---

[3] The complaint does not contain any facts regarding Dennis's hiring or training.

forth herein are adequate to state a viable cause of action against Dennis for invasion of privacy under Alabama law.

The invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use." Phillips v. Smalley Maint. Servs., Inc., 435 So. 2d 705, 708 (Ala. 1983). Jones has not identified which specific privacy wrong she is alleging. Claims arising in the sexual harassment context are usually examined under the intrusion on physical solitude or seclusion prong. For sexual harassment to be actionable as invasion of privacy, "Alabama courts have generally required invasion of privacy claims to allege both ongoing, persistent verbal harassment and unwanted physical contact." Austin v. Mac-Lean Fogg Co., 999 F. Supp. 2d 1254, 1263 (N.D. Ala. February 25, 2014). While unwanted solicitation of sexual relations certainly may be offensive, the Alabama courts have found that such solicitation alone is not so highly offensive as to constitute the tort of invasion of privacy. See Rose v. SMI Steel LLC, 18 F. Supp. 3d 1317, 1322 (N.D. Ala. 2014); see also Busby v. Truswal Systems Corp., 551 So. 2d 322 (Ala. 1989)(reversing a summary judgment for the employer on an invasion of privacy claim when

plaintiffs' supervisor had made extremely lewd comments and sexual advances toward plaintiffs and put his arm around the plaintiffs, grabbed their arms, and stroked their necks); Hovanski v. Am. Income Life Ins. Co., 2006 U.S. Dist. LEXIS 105838, *45, 2006 WL 8436890, *13 (N.D. Ala. Jan. 11, 2006)(where plaintiff alleged that Defendant's agents invaded her privacy by kissing her, inquiring into her sex life with her husband, making sexual comments, and using her computer to view pornography, plaintiff had alleged facts which raised a genuine issue of material fact as to whether Defendant's agents had invaded her privacy); Pressley v. City of Anniston & Daryl Abernathy, 2016 U.S. Dist. LEXIS 120505, *68 2016 WL 4679135, *22 (N.D. Ala. Sept. 7, 2016)("The court is persuasively guided by the observation in Austin (as restated in Rose) that a triable privacy claim involving sexually-harassing conduct customarily includes some type of offensive physical aspect to be cognizable under Alabama law.").

While it is questionable whether Jones has stated an invasion of privacy claim based on the sexual harassment of her by Defendant Dennis and her male co-workers, the undersigned is nevertheless satisfied that the facts, taken as a whole, are sufficient such that a jury could conclude that the sexual harassment, coupled with Jones's termination and Defendant Dennis's conduct in having her arrested on false charges of theft of company property, filming her arrest on his cell phone, circulating the video of her arrest

on social media, and creating a fake Facebook page of Jones
featuring her mugshot, which he circulated among her online
connections, constituted a malicious and unwarranted invasion of
her privacy as "publicity which violates the ordinary decencies,"
"unwarranted appropriation or exploitation of one's personality,"
and by putting her in a false position in the public eye (*i.e.*,
"false light" invasion of privacy). See I.C.U. Investigations,
Inc. v. Jones, 780 So. 2d at 689; Glennon v. Rosenblum, 325 F.
Supp. 3d 1255, 1265 (N.D. Ala. 2018)(accord)(default judgment).
However, there are no allegations that Industry One had knowledge
of this conduct and ratified it. Accordingly, the complaint does
not state a claim against Industry One for invasion of privacy as
an intrusion upon Plaintiff's physical solitude and seclusion.

### 5. Claims for Libel/Defamation against Industry One and Dennis (Count IV).

Next, Count Four alleges libel[4] and defamation of character
against Defendants Dennis and Industry One (through ratification
of Dennis's conduct), based on Dennis's "intentional making of
substantially untrue statements appearing in print, police
reports, emails, social media, photographs, videos, and/or another
type of visual content about the Plaintiff which were made
knowingly or recklessly and published to others and which harmed

---

[4] "Libel is a form of defamation accomplished through a permanent medium such as writing." See Glennon, 325 F. Supp. 3d at 1265.

the Plaintiff" and necessarily subjected Plaintiff to humiliation, disgrace, brought her into ill repute, and destroyed confidence in her integrity.  (Doc. 1 at ¶¶ 44-60, 78-82).  Having thoroughly reviewed the complaint, the Court is satisfied that the factual allegations in the complaint are adequate to state a viable cause of action for defamation against Defendant Dennis under Alabama law, but not against Defendant Industry One.

There are two types of defamation: libel, which involves the use of print media to publish the defamatory comment, and slander, which involves the oral expression of a defamatory comment.  See Jackson v. Bank of New York Mellon, 2016 WL 4942085, *11 (S.D. Ala. July 19, 2016), report and recommendation adopted, 2016 WL 4942012 (S.D. Ala. Sept. 15, 2016), aff'd on other grounds sub nom. Jackson v. Bank of Am., N.A., 898 F.3d 1348 (11th Cir. 2018).  "The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm [(actionable per se)] or the existence of special harm caused by the publication of the statement [(actionable per quod)].  Id.

In this case, Jones's assertions that Dennis made a knowingly false statement to the police that she had stolen company property,

which led to her immediate arrest for theft of property; that Dennis filmed Jones's arrest on his cell phone and published the video of that arrest on social media;[5] and that Dennis created a fake Facebook page of Jones featuring her mugshot, which he then shared with Jones's online connections, are sufficient to state a viable defamation claim against Defendant Dennis under Alabama law. However, there are no allegations that Industry One was aware of or ratified this part of Defendant Dennis's conduct. Therefore, Jones has not stated a claim for defamation against Industry One. See Andazola v. Logan's Roadhouse Inc., 871 F. Supp. 2d 1186, 1224 (N.D. Ala. 2012)("An employer ratifies conduct if: (1) the employer has actual knowledge of the tortious conduct; (2) based on this knowledge, the employer knew the conduct constituted a tort; and (3) the employer failed to take adequate steps to remedy the situation.").

### 6. Claim for Outrage Against Dennis and Industry One (Count V).

Next, Count Five alleges a claim for outrage against

---

[5] Although it is literally true that Plaintiff was arrested for theft of property for allegedly failing to return company property, that fact does not defeat Plaintiff's claim for defamation under the circumstances of this case. Cf. Windham v. City of Fairhope, 2013 U.S. Dist. LEXIS 54203, *55, 2013 WL 1679355, *14 (S.D. Ala. Apr. 16, 2013)("Neither side addresses whether a literally true statement with a false implication may support a defamation claim under Alabama law. Review of applicable authority yields an affirmative result.").

Defendants Industry One and Dennis based on Dennis's sexual harassment of Plaintiff, retaliation against Plaintiff, invasion of Plaintiff's privacy, and defamation of Plaintiff's character, and Defendant Industry One's ratification of Dennis's conduct. (Doc. 1 ¶¶ 83-86s).  While the question of whether Plaintiff states a claim for outrage under the circumstance of this case is a close one, having thoroughly reviewed the complaint, the Court is satisfied that the factual allegations detailed in the complaint, when viewed as a whole, state a viable claim for outrage against Defendant Dennis, although not against Defendant Industry One.

In this case, Jones's complaint alleges that Defendant Dennis, her supervisor at Industry One, engaged in a four-month-long campaign of sexual harassment against her, to include repeatedly asking her to go out with him, telling her that she was "fine," making sexual comments about her body, referring to her as "eye candy," asking if she was going to give him a chance while assuring her that no one would know, suggesting that she would get a pay raise or a promotion if she went out with him, stating in front of the other male employees that she had "just enough to work with," repeatedly referring to her "ass," and questioning her about whether she was sexually involved with a female co-worker who was gay.  When Jones continued to refuse Dennis's sexual advances, he retaliated against her by making things difficult for her at work and then by firing her.  On July 30, 2019, the day

after Dennis fired Jones, Jones was told by corporate managers Harris and Bildner to return her company property to Dennis at the office at 10:00 a.m., but Dennis never showed up. Jones waited at the office for over an hour (with her son) and then left. The next day, July 31, 2019, Jones again attempted to return the company property Dennis at the Mobile office, but when he learned that she had been to the EEOC that morning to inquire about filing a charge against him, he refused to take the equipment. Instead, Dennis became physically aggressive (*i.e.,* he got in her face), causing her to run next door to the police station for help, at which point Dennis swore out a false criminal report against her stating that she had stolen company property, resulting in her immediate arrest for theft of company property. Dennis then filmed Jones's arrest on his cell phone and circulated the video on social media, along with a fake Facebook page that he made featuring Jones's mugshot, which he circulated to her online connections.

As noted, while the question of whether these allegations state a claim for outrage is a close one, for the reasons discussed in relation to the invasion of privacy claim and indeed all of the claims leveled by Jones against Defendant Dennis and Industry One in this case for which they are liable, and based on the totality of the egregious circumstances presented herein, the Court cannot say that Jones has failed to state a viable cause of action for outrage against Defendant Dennis under Alabama law, although not

against Defendant Industry One.[6] <u>See</u>, <u>e.g.</u>, <u>Glennon</u>, 325 F. Supp. 3d at 1266 ("To establish a claim for outrage, a plaintiff must show that the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.' . . . To recover for outrage, the plaintiff must show that the defendant's conduct was 'beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized society.' . . . Although this high standard has led the Alabama Supreme to recognize the tort of outrage only in a limited set of circumstances, the scope of the tort is not limited to those previously recognized situations. . . . Given the extreme facts stated in Ms. Glennon's complaint . . ., Ms. Glennon's claim clears the high threshold for outrage. Ms. Rosenblum admits that she 'posted the story on public websites maliciously and with the intent to cause harm to Mrs. Glennon.' . . . To cause the intended harm, Ms. Rosenblum crafted a story with explicit details that portrayed Ms. Glennon as a shameful, untrustworthy person. . . . . Ms. Rosenblum published this story in a public forum and responded to her own story with comments aimed at causing further damage to Ms. Glennon. . . . Ms. Glennon testifies that she

---

[6] As stated, there are no allegations that Industry One was aware of Dennis's post-termination conduct, which conduct factors heavily in this claim.

suffered severe emotional distress and anxiety as she attempted to defend her reputation as a wife, a mother, and a professional against the attacks of strangers who had read the story online. . . . Public internet forums abound. It is intolerable in a civilized society for an individual to use these platforms to broadcast scandalous lies about a complete stranger. As this case illustrates, the internet amplifies the reach of such corrosive falsehoods while obscuring their source and support or the lack thereof. Not every case of internet cruelty will surmount the high bar for outrage. But here, Ms. Rosenblum went through the trouble of couching her lies in an elaborate story, giving them an air of plausibility by setting them in the real estate context in which Ms. Glennon actually works. Ms. Rosenblum concedes that she published these lascivious falsehoods solely to inflict emotional and professional harm upon a woman she had never met. Ms. Rosenblum also chose a website that was public and evidently did not verify the content it offers so that the story would be broadly read. Under these circumstances, the Court finds that the elements of outrage have been satisfied.); Lees v. Sea Breeze Health Care Ctr., Inc., 391 F. Supp. 2d 1103, 1106-08 (S.D. Ala. 2005)("Review of pertinent Alabama authorities reveals that the line of demarcation between non-actionable outrage claims and actionable outrage claims in the employment arena is found in the determination of whether the termination is for reasons that contravene public

policy. Where a plaintiff complains that her discharge contravenes public policy, particularly if the discharge was the culmination of a protracted pattern of discrimination in violation of public policy, she may properly pursue a claim of outrage because the violation of public policy furnishes the requisite 'sound of fury' to accompany the termination. . . . Alabama courts have construed this standard to authorize outrage claims where a plaintiff is complaining about discrimination in retaliation for exercising the fundamental right to marry, or about intrusion on her federally protected right to be free from gender discrimination.").

Here, in addition to the campaign of sexual harassment by Defendant Dennis against Jones described in detail herein, there are notable factors that make this case particularly egregious, namely: 1) Dennis was Jones's supervisor, and not only did he sexually harass her himself, he directed other male employees to go to the office to sexually harass her; 2) although Jones repeatedly made extraordinary efforts to report Dennis's and the other male employees' sexual harassment to multiple managers for Industry One, those managers invariably and repeatedly failed to help her; instead, they sent her on an elusive, wild goose chase that led her endlessly in circles in search of a manager who would help her and, upon talking to multiple managers,[7] Jones was

---

[7] Up to and including the day that Jones was fired by Dennis on July 29, 2019, no one at Industry One did anything to help her or **(Continued)**

instructed to: (a) report the conduct to Dennis (the harasser) himself, (b) "change the locks on the office door," and (c) "watch [her] back;" 3) because Jones refused Dennis's sexual advances, he made her job more difficult and then he fired her; however, his retaliation did not end there: instead, Dennis embarked on a malicious campaign to publicly shame and harm her; when Jones attempted to return the company's property, he refused to take it and physically and aggressively "got into [her] face" when he learned that she had inquired that day at the EEOC about filing a complaint against him; when Jones ran next door to the police station for help, Dennis swore out a false criminal report against her for theft of company property, resulting in her immediate arrest; Dennis then filmed Jones's arrest on his phone, circulated the video of her arrest on social media, created a fake Facebook page of Jones featuring her mugshot, and circulated it online including among her online connections, causing her great emotional distress and public humiliation. Being a victim of any one of these acts might reasonably be expected to cause upset,

---

to stop Dennis's or the co-employees' sexual harassment of and retaliation against her. Instead, each manager to whom she reported the harassment essentially handed the problem back to her and told her to contact someone else in the company, who upon being informed by Jones of the circumstances, told her to contact someone else, until they made a full circle and started all over again. Even after being fired, when Jones immediately contacted Industry One's corporate managers, they refused to help her. (Doc. 1, ¶¶ 41-43).

disgust, or shock.  However, for a victim of sexual harassment, such as Jones, to be sexually harassed for months, then fired by her harasser, then arrested on false charges brought by her harasser in retaliation for refusing to give in to his sexual advances, then filmed by her harasser while being arrested, then made to suffer public shame and humiliation by the harasser from his publication of the arrest video on social media along with a "fake Facebook page" featuring her mugshot, which was targeted to include her online connections, evidences a maliciousness and intent to harm by Defendant Dennis that is utterly intolerable in a civilized society.

Based on the foregoing, the Court is satisfied that Jones has stated a viable cause of action against Defendant Dennis for outrage under Alabama law.  As stated, Jones has not stated a viable cause of action for outrage against Defendant Industry One, as there are no allegations that Industry One had knowledge of Dennis's post-termination conduct upon which this claim is largely based.

Accordingly, because the well-pleaded factual allegations in the complaint are deemed admitted by virtue of Defendants' default and because they are sufficient to state the foregoing claims against Defendant Dennis and Defendant Industry One under Title VII and Alabama law, the Court finds that Defendants Industry One

and Dennis are liable to Jones for the claims alleged in Counts One through Five of the Complaint, as set forth herein.

**C. Damages.**

Notwithstanding the propriety of a default judgment against Defendants, it remains incumbent on Plaintiff to prove her damages. "If the admitted facts are enough to establish liability, the Court must ascertain the appropriate amount of damages and enter final judgment in that amount." Mangel, 2020 U.S. Dist. LEXIS 59059, *5, 2020 WL 1666032 at *2 (citing Nishimatsu Constr. Co., 515 F.2d at 1206); see also Whitney, 2011 U.S. Dist. LEXIS 115225, *7, 2011 WL 4702916 at *4)("Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from.")(emphasis in original) (quoting PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010)). "Importantly, damages may be awarded only if the record adequately reflects the basis for the award, which can be shown by submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested." Mangel, 2020 U.S. Dist. LEXIS 59059, 2020 WL 1666032 at *2 (citing Adolph Coors, 777 F.2d at 1544). "When the amount of damages is not sum certain, the court may conduct an evidentiary hearing. Id. (citing Fed. R. Civ. P. 55(b)(2); United States Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)("[A]

judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.").

Here, Jones seeks front pay and backpay (plus interest), compensatory damages, punitive damages, nominal damages, costs, attorneys' fees, and expenses for her injuries and damages proximately caused by Defendants' conduct; reinstatement; a declaratory judgment that "the employment policies, practices, procedures, conditions and customs of the Defendant Industry One violative of the rights of the Plaintiff as secured by Title VII and the laws of the State of Alabama;" and a permanent injunction enjoining Defendants and those acting in concert with Defendants from continuing to violate Title VII and the laws of the State of Alabama. (Doc. 1 at 14). The undersigned finds that because Jones's request for compensatory and punitive damages related to her humiliation, mental anguish, and great emotional distress are not readily capable of mathematical calculation, an evidentiary hearing is warranted.

### III. CONCLUSION

Accordingly, based on the foregoing, the undersigned **RECOMMENDS** that the Clerk's entry of default (Doc. 48) be **vacated**; that the Plaintiff's motion for entry of default (Doc. 45) be **denied**; and, in accordance with the Court's inherent power to impose sanctions for litigation misconduct, that Plaintiff's

motion for a default judgment of liability as to Defendants Industry One and Kevin Dennis (Doc. 49) be **granted in part and denied in part**, as follows:

Plaintiff's motion for a default judgment as to Defendants Industry One and Kevin Dennis is due to be **granted** as to Plaintiff's complaint in its entirety, with the exception that Plaintiff has not stated a viable cause of action for invasion of privacy, defamation, or outrage against Defendant Industry One; therefore, Plaintiff's motion for a default judgment against Defendant Industry One on those claims is due to be **denied.** (Docs. 1, 49). The undersigned further recommends that an evidentiary hearing be conducted to determine damages.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the

right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **8th** day of **October, 2021.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE